J-A10001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER JOE YOUNGER | |
| Appellant | No. 541 WDA 2015 |

Appeal from the Judgment of Sentence November 14, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011526-2010

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

JUDGMENT ORDER BY PANELLA, J.                **FILED AUGUST 12, 2016**

Appellant, Christopher Joe Younger, appeals from the judgment of sentence of the Court of Common Pleas of Allegheny County. A jury convicted him of possession of a controlled substance (heroin) and criminal conspiracy.[1] Upon review, we adopt the trial court's Rule 1925(a) opinions and affirm the judgment of sentence.

Given the parties' intimate familiarity with the details of this case and the trial court's thorough recounting of the facts and procedural history, we need not further elaborate upon the background of this case. *See* Trial Court Opinion, 1/31/14, at 2, 4-6.

---

[1] 35 P.S. § 780-113(a)(30), and 18 Pa.C.S.A. § 903(a), respectively.

Following the trial court's disposition of his post-sentence motion, Appellant filed a concise statement of errors complained of on appeal, raising a plethora of issues. The trial court issued a comprehensive opinion in support of its ruling under Pennsylvania Rule of Appellate Procedure 1925(a). **See** Trial Court Opinion, 1/31/14. On appeal, this Court vacated Appellant's judgment of sentence pursuant to the United States Supreme Court's decision in **Alleyne v. United States**, --- U.S. ---, 133 S.Ct. 2151 (2013), and remanded for resentencing. **See Commonwealth v. Younger**, 1601 WDA 2012 (Pa. Super., filed August 20, 2014) (unpublished memorandum). The trial court resentenced Appellant on November 14, 2014. Appellant again filed post-sentence motions, which the trial court denied.

Subsequent thereto, Appellant filed a second concise statement, which contained repeated allegations of error previously addressed in the trial court's January 31, 2014 opinion. On September 24, 2015, the trial court issued a second Rule 1925(a) opinion. In disposing of Appellant's issues, the trial court adopted its prior opinion in order to address Appellant's overlapping claims.

On appeal, Appellant raises fifteen issues for our review, a staggering number.[2] **See** Appellant's Brief at 5-7.

_____

[2] "While criminal defendants often believe that the best way to pursue their appeals is by raising the greatest number of issues, actually, the opposite is
*(Footnote Continued Next Page)*

After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the trial court's opinions, authored by the Honorable Jill E. Rangos, thoroughly and properly dispose of Appellant's issues on appeal. *See* Trial Court Opinion, 1/31/14, at 7-15; Trial Court Opinion, 9/24/15, at 4-8. We, therefore, affirm the judgment of sentence based on those decisions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2016

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

true: selecting the few most important issues succinctly stated presents the greatest likelihood of success." *Commonwealth v. Ellis*, 626 A.2d 1137, 1140 (Pa. 1993). "Appellate advocacy is measured by effectiveness, not loquaciousness." *Id*., at 1140-1141 (citation omitted). This is because "[I]egal contentions, like the currency, depreciate through over issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one[.]" *Commonwealth v. Robinson*, 864 A.2d 460, 480 n.28 (Pa. 2004) (quoting Robert H. Jackson, J., "Advocacy Before the United States Supreme Court," 25 Temple L.Q. 115, 119 (1951)). *See also*, Ruggero J. Aldisert, J. "Winning on Appeal: Better Briefs and Oral Argument," 129 (2d ed. 2003) ("When I read an appellant's brief that contains more than six points, a presumption arises that there is no merit to *any* of them.").

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

v.

CHRISTOPHER YOUNGER

Appeal of:

CHRISTOPHER YOUNGER,

    Appellant

CRIMINAL DIVISION

**CC No. 201011526**

**OPINION**

Honorable Jill E. Rangos
Room 533
436 Grant Street
Pittsburgh, PA 15219

Copies to:

Lucas Kelleher
104 Keystone Street
Altoona, PA 16602

Michael Streily
Office of the District Attorney
401 County Courthouse
436 Grant St.
Pittsburgh, PA 15219

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA      CRIMINAL DIVISION

v.      CC No. 201011526

CHRISTOPHER YOUNGER

Appeal of:

CHRISTOPHER YOUNGER,

Appellant

## OPINION

RANGOS, J.      January 31, 2014

On April 2, 2012, Appellant, Christopher Younger, was convicted by a jury of his peers of one count of Possession with Intent to Deliver a Controlled Substance[1] (Heroin) and one count of Criminal Conspiracy[2]. Appellant was sentenced to the mandatory three to six years of incarceration on the PWID count with three years consecutive probation and a concurrent three years probation on the Conspiracy count. Post Sentence Motions were denied on September 17, 2012 and Appellant filed a Notice of Appeal on October 15, 2012. Appellant filed a Statement of Errors Complained of on Appeal on November 7, 2012.

While this Court was writing its Opinion, counsel for Appellant filed a Motion to Withdraw. This Court granted the motion and permitted subsequent counsel, the Office of the Public Defender, to file a supplemental Concise Statement *nunc pro tunc*. Before filing a

---

[1] 35 P.S. § 780-113(a) (30).
[2] 18 P.S. § 903(a).

2

Supplemental Concise Statement, the Office of the Public Defender withdrew on September 17, 2013 and current counsel entered his appearance. Appellant, through his current counsel, filed a Supplemental Concise Statement of Matters Complained of on Appeal on November 25, 2013.

## MATTERS COMPLAINED OF ON APPEAL

Appellant, in his initial Concise Statement raised the following seven issues on appeal:

Did the sentencing court err by concluding that Defendant is ineligible for the RRRI[3] program?

Was the evidence insufficient to support the verdict?

Was the jury verdict against the weight of the evidence?

Did the jury render an inconsistent verdict by acquitting Defendant of the Simple Possession count and convicting on the Possession with Intent to Deliver count?

Was a juror unlawfully or otherwise coerced into returning a guilty verdict?

W[ere] there significant and reversible issues in the deliberation process?

Was the jury verdict not unanimous?

Concise Statement of Errors to be Raised on Appeal, p. 1-2. (November 7, 2012)

Current counsel filed a Supplemental Concise Statement, which incorporated by reference the original Concise Statement, restated some issues previously raised in the original Concise Statement and raised new allegations of error. Specifically, Appellant alleges this Court erred in not sentencing him to RRRI following the Commonwealth's waiver of eligibility requirements and abused its discretion in determining that he is not an eligible candidate for boot camp. Appellant further alleges that the Court erred in determining that Appellant did not have an expectation of privacy in the vehicle, in

---

[3] Recidivism Risk Reduction Incentive.

3

permitting a Commonwealth witness to testify as an expert, in admitting into evidence the bail background information form, as it was both irrelevant and prejudicial, and in admitting irrelevant and prejudicial hearsay testimony. Next, Appellant "avers that the Trial Court erred and/or abused its discretion in overruling objections and requests for mistrials during the Defendant's jury trial." Appellant also alleges the Court erred in denying pretrial motions in limine and that the Affidavit of Probable Cause was invalid as once false and/or inaccurate statements included therein are removed from consideration, the remaining facts do not establish probable cause. Additionally, Appellant alleges prosecutorial misconduct in failing to provide discovery and in presenting evidence which contradicted information in the search warrant. Lastly, Appellant alleges that this Court erred in denying a motion for extraordinary relief based on lack of a unanimous verdict. Supplemental Concise Statement of Errors to be Raised on Appeal, p. 4-8. (November 25, 2013)

## SUMMARY OF THE CASE

Corporal Mike Colberg of the Monroeville Police Department, a police officer with twenty years experience, testified that he was on patrol duty with his canine partner on May 5, 2010. (Transcript of Jury Trial of March 28, 2012 to April 2, 2012, hereinafter TT 69) He responded to a call at A & L car dealership ("Dealership") where a Chevy Impala had been abandoned. (TT 70) Appellant, Christopher Younger, reportedly had left the car in that spot, blocking in his own car, a 2004 Land Rover, after a dispute between Appellant and the Dealership over damages to a loaner car. (TT 70, 75) When Corporal Colberg approached the Impala, he noticed a strong odor of marijuana from several feet away. (TT 76) Corporal

4

Colberg testified that he intended to impound the vehicle and obtain a search warrant. (TT 80) Before the tow truck arrived, the manager of the Dealership observed Appellant in an adjacent parking lot, approximately forty yards uphill. (TT 80-81)

When Corporal Colberg arrived in the adjacent lot, he observed Appellant running toward a Toyota Avalon and reaching for the driver's side door handle. (TT 82) Corporal Colberg also observed a codefendant in this case, Nakia Miller,[4] standing on the passenger side of the vehicle. *Id.* Appellant told the Corporal that he was running to get something out of his car. (TT 84) Based on a prior report from the Dealership earlier that day, specifically that Appellant was seen carrying a gun on his person during a verbal altercation (TT 70), the Corporal handcuffed Appellant for officer safety. (TT 84) His canine partner, a certified drug sniffing dog, then alerted three times on the Avalon: on the driver's side door along the seam, at the trunk seam and on the passenger side door seam. (TT 89)

While Appellant and Miller were talking to the Corporal, Detective John Pawlowski, who had responded as backup, observed on the front passenger floor board inside the Avalon a gray wool tube sock that was stuffed with something. (TT 120) After obtaining a search warrant, police searched both the Impala and the Avalon. (TT2 7) From inside the sock found on the Avalon front passenger floor, 1003 individual stamped bags of heroin were recovered. (TT2 21) Officers also recovered six cell phones from inside the Avalon. (TT2 6) In addition, Officer James Hredzak testified that he found in the Avalon a plastic bottle that looked like a Coca-Cola bottle, but actually came apart and contained a secret compartment which, in his experience, is commonly used to conceal narcotics. (TT2 9) Of significance, Officer Hredzak also recovered from the center console a wallet containing Appellant's social security card and credit cards, (TT2 9-10) and several other indicia of Appellant's presence in the vehicle, including his

---

[4] Miller's case was severed prior to trial.

5

passport and several prescription medication bottles in the back seat. (TT2 13) The lease agreement for the Avalon was also recovered from the vehicle and listed codefendant Miller as the Lessee. (TT2 10) Miller and Appellant both initially indicated that the Avalon was owned by a female friend of theirs. (TT 118)

Officer Hredzak testified that while Appellant was detained at the scene, he spontaneously offered various explanations for his conduct.[5] (TT 122) Initially, he indicated he was heading to his car (the Avalon) to retrieve something when he was detained. *Id.* Later, Appellant said that he came with codefendant Miller and a third individual named Chris in the Avalon to retrieve his Impala.[6] *Id.* After the police dog alerted on the Avalon, Appellant stated that whatever was in the car did not belong to him. (TT 123) Specifically, Appellant stated his incredulity that Miller would bring illegal items into the car with him when the only thing Appellant had wanted was a ride. (TT 125) Next, Appellant asked to be taken out of earshot of Miller. *Id.* Once separated, Appellant offered to give Officer Hredzak a drug dealer in Monroeville in exchange for his release. (TT 123-124) Based on the numerous inconsistent statements, the Officer decided not to ask Appellant to reduce any of his statements to writing. (TT 124)

Detective Mark Goob testified by stipulation of counsel as an expert in narcotics transactions. (TT2 101) After considering the sheer number of stamp bags recovered, the lack of paraphernalia recovered from either the Avalon or Appellant, the minimal income of Appellant compared to his lifestyle, and his use of a vehicle not registered in his name, Det. Goob concluded that the drugs were possessed with the intent to deliver and not for personal use. (TT2 103)

---

[5] Officer Hredzak testified that he asked Appellant several times to stop talking. (TT 123)

[6] Appellant offered other variations of his story which were summarized by Officer Hredzak at the suppression hearing and referenced *infra* at p. 8.

6

## DISCUSSION

Appellant's Concise[7] Statements are nothing short of a muddled mess. Appellant's scatter-shot approach and failure to develop a number of issues with sufficient specificity and citation to the record make it difficult for this Court to properly address Appellant's allegations of error. In an attempt to respond to the numerous allegations raised, this Court has rearranged and combined Appellant's issues into the following areas: pretrial, trial, verdict, and sentence.

### Pretrial

Appellant claims that this Court erred in denying Appellant's Motion to Suppress. Appellant asserts that this Court erred in determining that he did not have an expectation of privacy regarding the vehicle at issue. The standard of review in determining whether the trial court appropriately denied the suppression motion is whether the record supports the factual findings and whether the legal conclusions drawn from these facts are correct. *Commonwealth v. Stevenson*, 894 A.2d 759, 769 (Pa.Super. 2006).

When challenged by the Commonwealth, the defendant has the burden of proving by a preponderance of evidence that he has a reasonable expectation of privacy in the vehicle in question.[8] *Commonwealth v. Sell*, 470 A.2d 457, 466 (Pa. 1983). Appellant failed to establish a reasonable expectation of privacy. According to the testimony at the suppression hearing, a dispute between Appellant and the Dealership arose out of damage to a loaner car Appellant had been provided while the Dealership performed repairs to Appellant's 2004 Land Rover. The police became involved when Appellant returned to the Dealership in an Impala which he then

---

[7] This Court notes that the Supplemental Concise Statement is anything but concise, coming in at a whopping 69 pages, which fails to comply with Pa. R.A.P. 1925. This Court further notes that despite its length, the Supplemental Concise Statement fails to state with specificity where in the record each of these alleged errors were committed.

[8] Appellant fails to state which vehicle he believes was "at issue" at the suppression hearing, the Impala left at the Dealership or the Avalon at the adjacent lot. Based on the testimony at the suppression hearing, this Court believes Appellant intended to refer to the Avalon.

7

abandoned. After being observed running toward the driver's door of an Avalon in an adjoining parking lot above the Dealership, Appellant was approached by police and detained for officer safety. He spontaneously made numerous contradictory statements to the police during that encounter. Appellant first told officers on the scene that he arrived in the Avalon, and then said that he did not, that someone had dropped him off. (Transcript of Suppression Hearing of July 15, 2011, hereinafter ST 15) Appellant then stated that the Avalon belonged to a female friend, and if the police wanted to search the vehicle, they would have to ask her. *Id.* According to Officer Hredzak, "As the story evolved, [Appellant stated that the car] was a family business vehicle, and then later told [the Officer] that Mr. Miller owned the vehicle." (ST 16) After the search warrant was obtained and executed and the drugs were recovered, Appellant blamed Miller for giving him a ride in a car that contained drugs. (ST 21) Appellant specifically denied owning the vehicle. (ST 22) Both Appellant and Miller ultimately told Officer Hredzak at the scene that the vehicle belonged to Miller. (ST 60) The car was registered to Miller. (ST 51) When the two suspects were detained, the keys were in the ignition and the car was running. *Id.* Police recovered Appellant's wallet, a passport for a Christina Younger, and other items of indicia inside the vehicle. (ST 83)

This case is factually similar to *Commonwealth v. Millner*, 888 A.2d 680 (Pa. 2005). In determining that Appellee Millner did not have a reasonable expectation of privacy, the court stated:

> [A]ppellee never argued or testified that he had such an expectation of privacy; instead, he stated that the vehicle was not his. * * * Moreover, the Commonwealth's uncontradicted evidence demonstrated that the vehicle was registered to someone other than appellee.

*Id. at 686.* At the suppression hearing, Appellant neither testified nor argued that the Avalon was his. In fact, the uncontradicted testimony was that the Avalon was owned by Miller.

8

Appellant made numerous statements at the scene attempting to distance himself from the vehicle. Appellant's contention that he had a reasonable expectation of privacy in the Avalon stands in direct contradiction to his own statements to the police, as well as the entire body of evidence presented at the suppression hearing. Appellant told police that Miller had simply given him a ride to the Dealership in the Avalon to retrieve the Impala, the Avalon was registered to Miller, and Appellant's car, the 2004 Range Rover, was the reason for the entire encounter. As Appellant failed to establish a reasonable expectation of privacy in the Avalon at the suppression hearing, this Court correctly denied the suppression motion.

Next, Appellant alleges that this Court abused its discretion by denying a Motion in Limine to exclude alleged irrelevant hearsay testimony regarding a report that Appellant had been observed in possession of a firearm on the day in question. Appellant further alleges that the Court erred in overruling objections and denying a request for a mistrial on this issue. This Court permitted Corporal Colberg to testify that the Dealership shop manager, Alex DeFrancesco, during a verbal dispute over the damaged loaner car earlier that afternoon, observed Appellant with a handgun in his waistband and had previously observed Appellant on numerous occasions carrying a firearm in this manner. The testimony was not offered to prove the truth of the matter asserted, but rather to explain why the police took the precautions they did in dealing with Appellant at the scene. The probative value of this testimony is significant in that it explains the actions of the officers, in particular their decision to place Appellant in handcuffs upon encountering him. Appellant asserts prejudicial effect in that Appellant would needlessly be associated with a firearm, prejudicing the jury into thinking he is more likely to be a drug dealer. As this Court noted, many people legally carry firearms in Pennsylvania, and Appellant was not in possession of a firearm when arrested nor was he charged with a firearms

9

violation. As such, this Court deemed the prejudicial effect to be minimal. Out of an abundance of caution, this Court gave a cautionary instruction (TT 74), reminding the jury that Appellant was not charged with violating any firearms statute, and instructing that the testimony elicited was merely for the purpose of laying the foundation for the actions of the officers throughout the encounter. As this testimony was relevant and not admitted for the truth of the matter asserted, this Court properly admitted this evidence and Appellant's assertions of error to the contrary are without merit. *Commonwealth v. Sneed,* 526 A.2d 749, 754 (Pa. 1987).

Appellant alleges that the affidavit for a search warrant was based on false or inaccurate information, which, if excluded, would leave the affidavit devoid of probable cause. Appellant, however, despite the voluminous Supplemental Concise Statement, fails to specifically allege which statements in the Affidavit of Probable Cause were knowingly or intentionally false, or made with reckless disregard for the truth. Therefore, this Court is unable to address this alleged error and the issue is waived. Pa.R.A.P. 1925(b) (4) (ii), (vii). Likewise, any allegation of prosecutorial misconduct on this issue is also waived.

## Trial

Appellant alleges that this Court erred in admitting into evidence Appellant's bail background information form, in that it had no relevance and was more prejudicial than probative. The form, which Corporal Colberg testified is routinely completed by arrestees, contains basic biographical information, family contact information and employment information. (TT 26) Appellant wrote on the form that he was employed at Momma's Candies with an income of $300.00 a week. (TT 27) This information is relevant in a Possession with Intent case where intent is often proved by circumstantial evidence because it calls into question

10

Appellant's ability to own a number of cars given his stated income. Appellant's vague assertion of prejudicial effect is more than overcome by the probative value to the Commonwealth establishing the incongruity between Appellant's lifestyle and his stated income. Furthermore, the jury was aware that Appellant was arrested and charged in this case and would not likely be surprised or prejudiced to learn about the procedural step of completing a bail form upon arrest.

Appellant alleges this Court erred in permitting Detective Mark Goob to testify as an expert witness regarding the issue of Appellant's criminal intent. Det. Goob, qualified as an expert in narcotics transactions by stipulation of counsel, opined that the incongruity of Appellant's income and his lifestyle suggested that Appellant received additional income, consistent with the sale of drugs. As this incongruity was a factor in the witness' conclusion that the drugs were possessed with intent to deliver and not for personal use, it was appropriate for this Court to permit such testimony. Appellant's argument that his income was legally derived from his partial ownership of or employment at the candy store, while an appropriate subject for cross-examination, in no way precludes Det. Goob from stating his opinion that under these circumstances, the heroin was possessed with the intent to deliver.

Similarly, Det. Goob's testimony that drug dealers often operate out of vehicles which they do not own, as it was a factor in support of his opinion, was relevant and properly admitted by this Court. As an expert, Det. Goob is permitted to express his opinion based on hypothetical information. The jury then determines whether the Commonwealth has proven that any particular element relied on by Det. Goob has been proven in this case. *Commonwealth v. Daniels*, 390 A.2d 172 (Pa. 1978).

11

Appellant alleges prosecutorial misconduct by presenting testimony at trial regarding Appellant's willingness to provide information on other drug transactions, testimony which had not prior been provided to Appellant through discovery.[9] The legal principles relevant to a claim of prosecutorial misconduct are well established. Actions or inactions by a prosecutor rise to the level of prosecutorial misconduct only where their unavoidable effect is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict. *Commonwealth v. Hutchinson*, 25 A.3d 277, 307 (Pa. 2011).

Appellant essentially claims unfair surprise, that trial counsel had not been provided information that Appellant had made a statement to police that he was willing to set up another drug dealer. While the Commonwealth is required to provide all evidence in its possession to Appellant, Appellant has failed to establish that the Commonwealth had this statement in its possession. The Affidavit of Probable Cause does not include this statement. Appellant's competent and experienced trial counsel cross-examined the witness on this issue, attempting to call into question the credibility of the witness. This statement was properly admitted, without objection, and subject to cross-examination. As a result, neither the testimony nor the Commonwealth's reference to the statement in closing argument, constitute prosecutorial misconduct.

## Verdict

Appellant claims that the evidence was insufficient to support the verdict. The test for reviewing a sufficiency of the evidence claim is well settled:

---

[9] As with many of the issues raised, Appellant does not provide a citation to the record. In reviewing the transcripts, this Court has not found an objection by counsel preserving this issue for appeal. When an allegation is unsupported by citation to the record, this Court is prevented from assessing the issue and determining whether error occurred, and the issue should therefore be deemed waived. *Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa.Super.2006).

12

[W]hether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt... This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Hardcastle*, 546 A.2d 1101, 1105 (Pa. 1988) (citations omitted).

Appellant alleges that the evidence was insufficient to establish that Appellant possessed the heroin and that he possessed it with intent to deliver. Defendant was found guilty under the doctrine of constructive possession. "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." *Commonwealth v. Davis*, 280 A.2d 119, 121 (Pa. 1971).

Constructive possession may be found where an individual does not have actual possession over the illegal item but has conscious dominion over it. *Commonwealth v. Carroll*, 507 A.2d 819 (Pa. 1986). In order to prove "conscious dominion," the Commonwealth must present evidence to show that the defendant had both the power to control the contraband and the intent to exercise such control. *Commonwealth v. Gladden*, 665 A.2d 1201, 1206 (Pa.Super. 1995). These elements can be inferred from the totality of the circumstances. *Commonwealth v. Gilchrist*, 386 A.2d 603 (Pa.Super. 1978). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Parker*, 847 A.2d 745 (Pa.Super. 2004). Constructive possession may be proved by circumstantial evidence. *Commonwealth v. Carter*, 450 A.2d 142, 144 (Pa.Super. 1982). Individually, the circumstances may not be decisive; but, in combination, they may justify an inference that the accused had both the power to control and the intent to exercise that control, which is required to prove constructive possession. *Id.*

13

In the case *sub judice*, the evidence more than supported a conviction. A sock containing over 1000 stamp bags of heroin was recovered from a car that also contained Appellant's wallet, passport, and medications. Appellant's hand was on the driver's door handle of that vehicle when he was apprehended. At one point, Appellant admitted being inside the car. A jury could easily have found, based on this evidence, that Appellant had both the ability and the intent to control the drugs inside the car.

Similarly, the evidence overwhelmingly supports the conclusion that the drugs were possessed with the intent to deliver, and not for personal use. The large number of stamp bags in and of itself would likely suffice for a jury to determine that personal use was unlikely. However, when the additional factors are taken into consideration, such as the lack of personal use paraphernalia, Appellant's minimal reported income, and the use of a car not registered in his name, the jury was well within its prerogative to find that the Commonwealth had met its burden.

Appellant's next issue, that the verdict was against the weight of the evidence, is also without merit. The standard for a "weight of the evidence" claim is as follows:

> Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and [her] decision will not be reversed on appeal unless there has been an abuse of discretion.... The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Taylor*, 471 A.2d 1228, 1230 (Pa.Super. 1984). *See also, Commonwealth. v. Marks*, 704 A.2d 1095, 1098 (Pa.Super. 1997) (citing *Commonwealth v. Simmons*, 662 A.2d 621, 630 (Pa. 1995)).

14

Appellant alleges that the evidence did not permit a finder of fact to determine whether Appellant conspired to possess a controlled substance with intent to deliver. Based on the evidence presented at trial, the verdict does not so shock the conscience as to necessitate a new trial. Appellant and Miller were apprehended on either side of the Avalon, which was leased to Miller but contained numerous personal items of Appellant. Their conduct on the day in question, including the various statements of ownership of the vehicle, provides circumstantial evidence that Appellant and Miller were conspiring. The jury could reasonably conclude that Appellant and Miller were working together to sell heroin. As such, Appellant's claim is without merit.

Appellant alleges that the verdict was inconsistent. Appellant was convicted of Possession with Intent to Deliver but found not guilty of Possession. This allegation is based on an incorrect understanding of the law.

> Consistency in verdicts in criminal cases is not necessary.... When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. The rule that inconsistent verdicts do not constitute reversible error applies even where the acquitted offense is a lesser included offense of the charge for which a defendant is found guilty.

*Commonwealth v. Petteway*, 847 A.2d 713, 718 (Pa.Super. 2004).

Next, Appellant alleges that the verdict was not unanimous. Appellant's allegation that the jury verdict was not unanimous is not supported by the evidence. On April 2, 2012, the jury in the above-captioned case rendered a unanimous verdict of Guilty on all counts (ST 2). That verdict was confirmed by individual polling (ST 3-5) and then recorded with all jurors affirming their agreement by responding "I do." (ST 5) On April 5, 2012, Defendant filed a Motion for Extraordinary Relief seeking a hearing and an order vacating the verdict and granting a new

15

trial. On April 9, 2012, Defense Counsel filed Counsel's Affidavit in Support of Motion for Extraordinary Relief ("Affidavit").

This Court presided over the jury trial and the rendering of the verdict including the polling of the jury. Contrary to Defense Counsel's assertion (Affidavit, 2), Juror 11 did not need to be polled 3 times. Juror 11, who was visibly emotional when the verdict was rendered, initially paused, then gave a barely audible affirmative response without being prompted by the Court. While it was visually clear that Juror 11 responded "Yes", as his response was barely audible, he was asked by the Court to keep his voice up. Immediately thereafter, he promptly responded audibly "Yes." (Transcript of Verdict testimony, hereinafter VT 4) All parties present in the Courtroom at that time apparently were satisfied that the verdict was unanimous as evidenced by the fact that defense counsel did not then pose any objection. The verdict was recorded, again with an affirmation by all jurors, and the jury discharged. (VT 5-7).

Reportedly, some forty-five minutes after the verdict had been recorded and the jury dismissed (Affidavit, 3), Defendant's Counsel interviewed the emotional juror, a practice discouraged as against public policy. See *Pratt v. St. Christopher's Hosp.*, 581 Pa. 524, 540 (2005) (quoting *Commonwealth v. Patrick*, 416 Pa. 436, 442-43 (1965)). Defendant's Counsel submitted his own Affidavit purporting to quote Juror 11 at some length, on the one hand denying that he voted to find Defendant guilty, and on the other hand stating that the other jurors had pressured him by saying they would be stuck deliberating for weeks without his vote (Defendant's Counsel's Affidavit, 3-4).

Pa. Rule of Evidence 606(b) and longstanding case law make clear that "after the jury has separated and been discharged, jurors may not invalidate or impeach a verdict by their own testimony." *Patrick*, 416 Pa. at 442 (citing cases). Under similar facts, the Third Circuit,

16

applying its essentially identical rule (Fed.R.Evid. 606), reiterated the policy reasons behind the rule which include: "discouraging harassment of jurors by losing parties eager to have the verdict set aside; . . . promoting verdict finality; [and] maintaining the viability of the jury as a judicial decision-making body." *United States v. Lakhani*, 480 F.2d 171, 184 (3d Cir. 2007) (quoting *Gov't of the V.I. v. Gereau*, 523 F.2d 140 (3d Cir. 1975)).

Appellant does not allege either extraneous information or outside influence which would be exceptions to Rule 606(b). Rather, Defendant argues that the verdict as rendered indicated a lack of assent by Juror 11. This Court determined that Juror 11 did assent both initially and again after being asked to keep up his voice by responding "Yes" to the question "[d]o you agree with the verdict as read by your foreperson?" Likewise, this Court observed Juror 11 verbalize his agreement with the verdict by saying "I do" when the Minute Clerk recorded the verdict. While Juror 11 did use a tissue to dab at his eyes, and did pause very briefly before his initial barely audible response, such indication of emotion is not uncommon for jurors when rendering a verdict. More germane is the fact that counsel did not request a sidebar, make a motion or otherwise indicate any concern at that time as to the assent of all the jurors. Asking that the jurors be polled is common practice in this Court upon receipt of a guilty verdict and, as in this case, is prompted by an inquiry from the Minute Clerk (VT 2). After the jury was polled, Defense Counsel did not in any way indicate concern that the verdict was not unanimous.

Appellant alleges that a juror was in some manner coerced into finding Appellant guilty. This Court is unable to further address this allegation as Appellant fails to state precisely in what manner or by what means such coercion was to have taken place. Likewise, the allegation of "significant and reversible issues in the deliberation process," without further elaboration,

17

does not give the Court sufficient information from which this Court can prepare a legal analysis pertinent to the issue. Therefore, these issues are waived. Pa.R.A.P. 1925(b) (4) (ii), (vii).

## Sentencing

Appellant makes numerous allegations regarding the inappropriateness of his sentence. Before addressing the substantive issue, Appellant must raise a substantial question that his sentence is not appropriate under the Sentencing Code. 42 P.S. § 9781(b); *Commonwealth v. Urrutia*, 653 A.2d 706, 710 (Pa.Super. 1995). The determination of whether a particular issue constitutes a "substantial question" can only be evaluated on a case by case basis. *Commonwealth v. House*, 537 A.2d 361, 364 (Pa.Super. 1988). It is appropriate to allow an appeal "where an appellant advances a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the sentencing code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Losch*, 535 A.2d 115, 119-120 n. 7 (Pa.Super. 1987). Although Appellant's Concise Statement fails to specifically allege which provision applies, this Court shall dispose of Appellant's claim on its merits.

First, Appellant claims that the sentencing court erred in not sentencing Appellant to a RRRI sentence following the Commonwealth's waiver of eligibility requirements. 61 P.S. § 4505(b) states in relevant part:

> **(b) Waiver of eligibility requirements.**--The prosecuting attorney, in the prosecuting attorney's sole discretion, may advise the court that the Commonwealth has elected to waive the eligibility requirements of this chapter if the victim has been given notice of the prosecuting attorney's intent to waive the eligibility requirements and an opportunity to be heard on the issue. The court, after considering victim input, may refuse to accept the prosecuting attorney's waiver of the eligibility requirements.

18

Because this Court has discretion to refuse the prosecuting attorney's waiver, the appropriate inquiry is whether this Court abused its discretion. Assuming, *arguendo*, that Appellant had raised a substantial question, the standard of review with respect to sentencing is whether the sentencing court abused its discretion. *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996). A court will not have abused its discretion unless "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* It is not an abuse of discretion if the appellate court may have reached a different conclusion. *Grady v. Frito-Lay, Inc.*, 613 A.2d 1038, 1046 (Pa. 2003).

This Court considered numerous factors in sentencing Appellant, including the Pre-Sentence report. The Pennsylvania Supreme Court has held:

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors... Having been informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa.Super. 1988).

When imposing a sentence, this Court is required to consider, among other things, the protection of the public, the gravity of the offence in relation to the impact on the victims and community and the rehabilitative needs of the defendant. 42 P.S. § 9721(b). As a juvenile, Appellant pled guilty to Indecent Assault. More recently, Appellant pled to Disorderly Conduct at four separate criminal petitions. Both the juvenile case and the adult pleas resulted in the withdrawal of more serious charges, including rape in the juvenile case and three counts of possession as an adult. At the time of this trial, Appellant had three pending simple assault cases which had been postponed repeatedly by defense counsel until after this jury trial. After his conviction in this case but prior to sentencing, Appellant pled guilty and was sentenced in each

19

of those assault cases. Appellant's conviction history precluded him from RRRI-eligibility. Despite the Commonwealth's willingness to waive eligibility requirements, this Court remained concerned that Appellant's aggressive history, including a crime involving sexual violence, made him a substantially less than ideal candidate for success with RRRI. Furthermore, the facts in this case include Appellant's efforts to intimidate Dealership staff both verbally and also by showing a firearm and then by abandoning an Impala in a manner intended to inconvenience the Dealership.

Lastly, Appellant alleges that this Court abused its discretion by failing to sentence him to Boot Camp. This claim, like Appellant's numerous other issues, is without merit and fails under similar analysis as Appellant's previous issue. The statutory criteria for consideration for the Boot Camp program include a sentence of confinement "the minimum of which is not more than two years and the maximum of which is five years or less." 61 P.S. § 3903. As Appellant was sentenced to the mandatory sentence of three to six years on the PWID count, he was not Boot Camp eligible. Assuming, *arguendo*, that Appellant were eligible for Boot Camp, this Court has discretion to fashion a sentence that best satisfies the criteria set forth in 42 P.S. § 9721(b). For the same reasons as stated above regarding RRRI, this Court determined that Appellant's overall criminal history and aggressive behavior made him a poor candidate for Boot Camp. Furthermore, Appellant stated that he had suffered a closed-head injury from which he continued to experience deficits. This Court considered that the effects of that closed head injury would make him unsuitable for the physically rigorous aspects of the Boot Camp program.

20

## CONCLUSION

For all of the above reasons, no reversible error occurred and the findings and rulings of this Court should be AFFIRMED.

BY THE COURT:

_____J.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

v.

CHRISTOPHER YOUNGER

Appeal of:

CHRISTOPHER YOUNGER,

    Appellant

CRIMINAL DIVISION

CC No. 201011526

## OPINION

RANGOS, J.                                     September 24, 2015

On April 2, 2012, Appellant, Christopher Younger, was convicted by a jury of his peers of one count of Possession with Intent to Deliver a Controlled Substance[1] (Heroin) and one count of Criminal Conspiracy[2]. Appellant was sentenced to the mandatory three to six years of incarceration on the PWID count with three years consecutive probation and three years probation concurrent on the Conspiracy count. Post- Sentence Motions were denied on September 17, 2012 and Appellant filed a Notice of Appeal on October 15, 2012. Appellant filed a Statement of Errors Complained of on Appeal on November 7, 2012, raising seven issues on appeal, and a supplemental Concise Statement *nunc pro tunc* on November 25, 2013, incorporating by reference the first Concise Statement and raising ten issues, some of which overlapped. Neither pleading raised an issue with regard to the imposition of a mandatory

---

[1] 35 P.S. § 780-113(a) (30).
[2] 18 P.S. § 903(a).

2

sentence in consideration of *Alleyne v. Unites States*, __U.S.__, 133 S.Ct. 2151 (2013). This Court issued its Opinion on January 31, 2014. Nonetheless, Appellant raised an *Alleyne* issue on appeal. The Superior Court of Pennsylvania vacated the sentence based on the weight of the heroin not having been proven beyond a reasonable doubt, and remanded for resentencing. The Court declined to address Appellant's numerous other issues on appeal without prejudice for Appellant to raise them again following his resentencing.

This Court resentenced Appellant on November 14, 2014 to 16 to 50 months incarceration, followed by consecutive period of probation of three years. Appellant filed a Post-Sentence Motion which was denied on March 16, 2015. Appellant filed a Notice of Appeal on April 6, 2015 and a Concise Statement of Errors Alleged on Appeal on April 27, 2015.

## MATTERS COMPLAINED OF ON APPEAL

Appellant raises eight allegations of error on appeal, some of which contain subissues, many of which repeat prior allegations of error in previous Concise Statements. To the extent this Concise Statement mirrors previous versions, this Court adopts and incorporates its prior Opinion of January 31, 2014.

Appellant amended and expanded his Concise Statement in three areas. First, Appellant alleges that Detective Hredzak testified that Appellant consented to a car search, but the search warrant affidavit indicated that Appellant indicated he could not consent to the search as it was not his car. Appellant alleges that if "false statements" are excluded, what remains is insufficient to establish probable cause to search the vehicle. Additionally, Appellant alleges prosecutorial misconduct in presenting evidence which contradicted information in the search warrant, specifically, Detective Hredzak's testimony regarding whether consent was given to search the

3

vehicle. Lastly, Appellant alleges this Court erred in sentencing him excessively and failing to consider mitigating factors including Appellant's accomplishments and rehabilitation while incarcerated. Appellant alleges that the Court failed to state sufficient reasons on the record for a sentence imposed at the highest end of the guidelines and incorrectly determining the Offense Gravity Score for his offense. (Concise Statement of Errors alleged on Appeal, 4/27/15, at 2-8)

## SUMMARY OF THE CASE

For a detailed summary of the testimony in this case, *see Opinion,* January 31, 2014, at 4-6.

## DISCUSSION

Appellant's third Concise Statement lists many issues which this Court has addressed in its Opinion dated January 31, 2014. As such, this Court adopts its previous Opinion and hereby supplements it to address additional considerations raised by Appellant.

Appellant alleges that the affidavit for a search warrant was based on false or inaccurate information, which, if excluded, would leave the affidavit devoid of probable cause. Appellant specifically alleges that Detective Hredzak testified that Appellant consented to the search of the Impala, while the averments in the search warrant indicate that Appellant said he was unable to consent to such a search in that he was not the owner of the vehicle. Both Corporal Colberg and Officer Hredzak testified that Appellant gave numerous stories and several explanations of his conduct, and both stated that Appellant at one point gave consent to search the Impala. This Court found the testimony of the police officers credible and useful in reconciling the purported inconsistency between the search warrant affidavit and the testimony. As the inconsistency is based on Appellant giving police several different versions of his story and not on the officers

4

providing false testimony, allegations of error based on alleged false testimony are without merit. Likewise, any allegation of prosecutorial misconduct on this issue is also without merit.

Next, Appellant has raised several new challenges to the validity of his sentence.[3] Appellant alleges this Court failed to consider mitigating evidence, including the disparity between his sentence and his co-defendant's sentence, the amount of time served and his rehabilitation while incarcerated. Appellant further alleges that his Offense Gravity Score was improperly calculated, leading to a longer sentencing range within the Sentencing Guidelines. Appellant alleges this Court erred in failing to put on record its reasons for sentencing him at the high end of the guidelines.

Appellant alleges this Court failed to consider statutory sentencing factors, specifically Appellant's conduct since his initial incarceration. Appellant's claim constitutes a challenge to the discretionary aspects of his sentence. *Commonwealth v. Lamonda,* 52 A.3d 365, 371 (Pa.Super. 2012). "[T]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." *Commonwealth v. Crump,* 995 A.2d 1280, 1282 (Pa.Super. 2010); 42 Pa.C.S. § 9781(b). An "[a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Crump,* 995 A.2d at 1282. The determination of whether a particular issue constitutes a "substantial question" can only be evaluated on a case by case basis. *Commonwealth v. House,* 537 A.2d 361, 364 (Pa.Super. 1988). It is appropriate to allow an appeal "where an appellant advances a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the sentencing code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Losch,* 535 A.2d 115, 119-120 n. 7 (Pa.Super. 1987).

---

[3] This Court notes that Appellant appears to have abandoned his challenges to the sentence based on Appellant's eligibility for RRRI and Boot Camp.

5

> An allegation that a sentencing court "failed to consider" or "did not adequately consider" certain factors does not raise a substantial question that the sentence was inappropriate. *Commonwealth v. McKiel.* 427 Pa.Super. 561, 629 A.2d 1012 (1993); *Commonwealth v. Williams,* 386 Pa.Super. 322, 562 A.2d 1385 (1989) (*en banc*). Such a challenge goes to the weight accorded the evidence and will not be considered absent extraordinary circumstances. *McKiel,* 427 Pa.Super. at 564, 629 A.2d at 1013.

*Commonwealth v. Urrutia,* 653 A.2d 706, 710 (Pa.Super. 1995).

Appellant's allegation of error, that this Court failed to adequately apply all of the required sentencing factors, does not raise a substantial question for appellate review. However, in an abundance of caution, this Court will address the merits of Appellant's claim.

The standard of review with respect to sentencing is whether the sentencing court abused its discretion. *Commonwealth v. Smith,* 673 A.2d 893, 895 (Pa. 1996). A court will not have abused its discretion unless "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* It is not an abuse of discretion if the appellate court may have reached a different conclusion. *Grady v. Frito-Lay, Inc.,* 613 A.2d 1038, 1046 (Pa. 2003).

As this Court previously stated, this Court, in fashioning its sentence of Appellant, considered the protection of the public, the gravity of the offense in relation to the impact on the victims and the community, and the rehabilitative needs of defendant. 42 Pa.C.S. § 9721(b). Moreover, this Court was guided by the Pre-Sentence Report and the Sentencing Guidelines. The Pennsylvania Supreme Court has held:

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors...Having been informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.

*Commonwealth v. Devers,* 546 A.2d 12, 18 (Pa.Super. 1988).

6

Appellant alleges this Court failed to consider certain mitigating factors, including his amount of time served, rehabilitative efforts, and the disparity between his and his co-defendant's sentence. The sentence of a co-defendant is irrelevant to Appellant's sentence. Appellant must be sentenced on his own merits, according to sentencing factors listed in § 9721(b). As to his rehabilitative efforts, while this Court did consider such efforts and commends Appellant for his efforts, this Court must also consider the protection of the community and the gravity of the offense. Despite Appellant's numerous classes, he continued to demonstrate by his attitude and demeanor the same lack of maturity and respect for authority that this Court observed during the trial and that the evidence at trial suggests were at the root of the initial confrontation at the dealership as well as much of what followed. This Court continued to be concerned about Appellant's ability to return to society and lead a law-abiding life. When all of the sentencing factors were considered by this Court, it did not abuse its discretion in imposing a sentence that was within the standard range of the Sentencing Guidelines.

Appellant alleges his Offense Gravity Score (OGS) was calculated incorrectly, and as a result, his sentence is unduly harsh. Appellant is incorrect. 204 Pa.C.S. § 303.15 states that 35 Pa.C.S. § 780-113 §§ A30 Possession With Intent to Deliver Heroin carries an OGS of 8 when the amount of heroin in question was between 10 and 50 grams. In the case *sub judice*, the amount of heroin was 17 grams. This Court used an 8 OGS in sentencing Appellant. Appellant's argument that *Alleyne* should be extended to Offense Gravity Scores within the Sentencing Guidelines is not supported by any authority and would lead to the fact finder having to determine a non-mandatory sentencing range, an outcome which it is unlikely the legislature intended. As a result, this Court did not improperly assign Appellant's OGS.

7

This Court, after summarizing its reasoning in sentencing Appellant, was asked by Appellant to specifically place its reasons on the record. The Court responded:

> I gave you a standard range sentence with a longer tail because I want to give the parole board the opportunity to determine whether or not the concerns that I had in sentencing originally have been resolved, whether you've been rehabilitated. Incarceration is not just about doing the time. It is about demonstrating that you've made some changes that will make you successful as a productive member of the community.

As discussed above, this Court had continued concerns over whether Appellant had been rehabilitated. Nevertheless, this Court imposed a standard range sentence that made Appellant immediately eligible for the Parole Board to reach a different conclusion.

## CONCLUSION

For all of the above reasons, no reversible error occurred and the findings and rulings of this Court should be AFFIRMED.

BY THE COURT:

_Jill E Rangos_____ J.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this OPINION was mailed to the following individuals by first class mail, postage prepaid on the 24th day of September 2015.

Lucas Kelleher
104 Keystone Street
Altoona, PA 16602

Michael Streily
Office of the District Attorney
401 County Courthouse
Pittsburgh, PA 15219

_____
James J. Robertson, Law clerk for Jill E. Rangos

9